IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CR-87-WKW |
| | ) | [WO] |
| WILLIE JEROME DAVIS | ) | |

## MEMORANDUM OPINION AND ORDER

On January 10, 2013, the Magistrate Judge filed a Recommendation (Doc. # 356) regarding Defendant Willie Davis's Motions to Suppress (Docs. # 181, 182). Defendant timely objected. (Doc. # 419.) The court reviews *de novo* the portion of the Recommendation to which the objection applies. 28 U.S.C. § 636(b)(1). For the reasons that follow, the objection is due to be overruled, the Recommendation adopted, and the motion denied.

### I. BACKGROUND

On April 19, 2012, Senior United States District Judge W. Harold Albritton authorized law enforcement to continue to intercept wire communications over one target telephone number and to begin to intercept communications over another. (Doc. # 181, Ex. 1.) Agents continued surveillance pursuant to the order on Target Telephone # 3 ("TT3"). Records indicated TT3's subscriber was a person named Hgthj Tiuy at an address in Irvine, California, but agents believed an alleged co-conspirator, Delmond Lamar Bledson, used the phone. Agents began surveillance on

Target Telephone # 4 ("TT4"). Though records listed the subscriber as Dave Daniels at an address in Elmore, Alabama, law enforcement believed Defendant Willie Davis was using TT4. (Doc. # 181, Ex. 1 at 44.)

But as one might expect, the tale did not begin with TT3 and TT4. Months earlier – in February and March 2012, respectively – Judge Albritton authorized intercepts for two other numbers, TT1 and TT2, associated with the same alleged drug trafficking conspiracy. In fact, the affidavit supporting the April 2012 wiretap application for TT3 and TT4 reveals that law enforcement had been using wire intercepts to investigate the alleged conspiracy as early as October, 2011. Information gained from those wiretaps indicated that Defendant Willie Davis was involved in an effort to distribute cocaine in and around Montgomery, Alabama, and ultimately led officers to seek to intercept communications on TT4.

Special Agent Devin Whittle of the United States Drug Enforcement Administration ("DEA") supported his application to start interception on TT4 and continue interception on TT3 with a 157-page affidavit. In it, Agent Whittle recited the nature of the offenses, demonstrated the need for interception, and detailed the investigation up to that point. Among other things, Agent Whittle explained that the ongoing intercepts on TT3 revealed calls between TT4 and TT3, and trained law enforcement officers listening to those calls had reason to believe the callers were

2

discussing drug trafficking. (*See, e.g.,* Doc. # 181, Ex. 1, ¶¶ 29–40.) Additionally, the affidavit recited telephone tolls analysis, which illustrated a high volume of calls between TT3 and TT4 and between TT4 and a number associated with a known drug trafficker. (Doc. # 181, Ex. 1 ¶¶ 53–56.) It also included background information on some of the individuals thought to be part of the alleged conspiracy and information gained from confidential informants.

Weeks after Judge Albritton authorized the continued wiretap on TT3 and the wiretap on TT4 based on Agent Whittle's affidavit, federal law enforcement officers secured nine search warrants and twelve arrest warrants using, in part, information gained as a result of the April 2012 wiretaps. One of the search warrants authorized officers to search Defendant Davis's home, and one of the arrest warrants was for Defendant Davis. Ultimately, a grand jury charged him with offenses related to an alleged drug trafficking conspiracy. (Doc. # 201.)[1]

## II. DISCUSSION

Defendant Davis moved to suppress the evidence gained from the wiretap on TT4, arguing that the wiretap violated his Fourth Amendment right to be free from unreasonable search and seizure. (Doc. # 181.) Likewise, he moved to suppress

---

[1] An indictment handed down in August, 2012 (Doc. # 201) superseded the May 2012 indictment (Doc. # 1).

evidence obtained during the search of his home on the basis that, without the wiretap evidence, there was insufficient cause for a search warrant. (Doc. # 182.) The Magistrate Judge concluded that there was probable cause to authorize the wiretap, and, accordingly, neither the wiretap nor the search of Defendant's home violated his Fourth Amendment rights. (Doc. # 356.)

Like a search warrant, a wiretap authorization requires probable cause. *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990); *United States v. Degaule*, 797 F. Supp. 2d 1332, 1346 (N.D. Ga. 2011). Specifically, the issuing judge must have probable cause to believe that an individual is committing or has committed a crime, that the interception will lead to particular communications regarding the crime, and that the target facilities are being used in connection with the offense or are commonly used by a target individual. *Degaule*, 797 F. Supp. 2d at 1346 (citing 18 U.S.C. § 2518(3)). The probable cause determination is a "'practical, common-sense decision' about whether the 'totality of the circumstances' indicate that there is probable cause that" the wiretap will lead to the evidence sought. *Nixon*, 918 F.2d at 900 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Defendant's objection simply restates the arguments contained in his motions to suppress. He argues that tips provided by informants were stale and unreliable, that Agent Whittle intentionally mischaracterized intercepted conversations, and that

4

without considering that information, there was not probable cause to support the wiretap authorization.

**A.      Information from Government Informants**

"[E]ven stale information is not fatal if the government affidavit updates, substantiates, or corroborates the stale material." *United States v. Harris*, 20 F.3d 445, 451 (11th Cir. 1994). Agent Whittle's affidavit did just that for the information gained from both informants, as law enforcement verified the informants' report of Davis's criminal history. Likewise, communications intercepted from a wiretap authorized earlier in the investigation – including conversations as late as March 25, 2012 to April 4, 2012 – suggested Davis was, as the informants told law enforcement years earlier, "back in business." (Doc. # 181, Ex. 1 ¶¶ 22–24.) Moreover, mature information is more likely stale when the suspected crime is discrete and isolated, rather than protracted or continuous in nature. *Harris*, 20 F.3d at 450. Large-scale drug trafficking operations like the one alleged here are necessarily protracted and continuous. *United States v. Schimmel*, 317 F. App'x 906, 909 (11th Cir. 2009).

Additionally, the affidavit sufficiently established the informants' reliability. Not only did Agent Whittle corroborate much of the material information, he also affirmed that the sources had previously provided reliable information.

**B.     Characterization of Conversations**

When considering wiretap applications, courts are entitled to rely on the reasonable interpretations of experienced law enforcement officers as to the meaning of coded language used by persons engaged in allegedly conspiratorial conversations. *See United States v. Flores*, 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *24, n.16 (N.D. Ga. Sept. 27, 2007) ("If a jury can properly consider this evidence, a District Judge may certainly take it into consideration in determining whether probable cause exists to authorize communication intercepts."). Agent Whittle has twenty-two years experience investigating narcotics cases, sixteen of which have been at the federal level. He averred that based on his experience, training, and knowledge, and based on evidence gained from other authorized intercepts, the conversations between Bledson and Davis that he included in his affidavit referenced drug activity. Based on the content of the conversations, other information available to law enforcement at that point in the investigation, and his experience, Agent Whittle's interpretations were not unreasonable. And they were proper considerations for the probable cause determination.

Importantly, a presumption of validity accompanies the affidavit supporting the search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009). Assuming without deciding that Agent

Whittle's characterizations of the conversations are necessary to a finding of probable cause, Defendant Davis has not made a substantial preliminary showing that Agent Whittle made a false statement knowingly, intentionally, or with reckless disregard for its truth. *Sarras*, 575 F.3d at 1218 (setting out standard for a *Franks* hearing). Defendant argues that Agent Whittle "took seemingly innocuous discussions . . . and intentionally misconstrued, mischaracterized and misinterpreted [them] in order to attempt to create probable cause for the wiretap." (Doc. # 181 at 15.) But his argument fails to appreciate that neither Agent Whittle nor the court was interpreting such discussions in a vacuum. Both enjoyed the context supplied by other information lawfully obtained in the investigation at the time of the application and the benefit of Agent Whittle's experience.

Defendant's attack is "conclusory" and unaccompanied by "an offer of proof." *See Franks*, 438 U.S. at 171 (holding that, to mandate a *Franks* hearing, allegations of falsehood should be accompanied by supporting evidence, including "[a]ffidavits or sworn or otherwise reliable statements of witnesses," or its "absence satisfactorily explained"). Defendant has not established that he is entitled to a *Franks* hearing, nor has he established that it was improper for the court to rely on the information.

In the context of a wiretap, "a fair probability" that law enforcement will intercept communications concerning the offense constitutes probable cause. *See* 18

U.S.C. § 2518(3) (articulating the probable cause requirements for a wiretap); *Gates*, 462 U.S. at 238 (holding that "a fair probability that . . . evidence will be found in a particular place" amounts to probable cause for a search warrant). Agent Whittle's affidavit taken as a whole – including the information from informants, his interpretations of the conversations at issue, background information on Davis, and telephone tolls analysis – established a fair probability a new intercept on TT4 would lead to communications concerning drug trafficking.[2]

### III. CONCLUSION

Accordingly, it is ORDERED as follows:

1. Defendant's objection (Doc. # 419) is OVERRULED;

2. The Recommendation of the Magistrate Judge (Doc. # 356) is ADOPTED;

3. Defendant's Motions to Suppress (Docs. # 181, 182) are DENIED.

DONE this 28th day of January, 2013.

                                                    /s/ W. Keith Watkins
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Having found that probable cause supported the interception authorization, the court finds that Davis's related motion to suppress evidence gained in the search of his home (Doc. # 182) is likewise due to fail.